BASS RIVER LOBSTERS, INC., and others[1] *vs.* DONALD R. SMITH.

Barnstable.    January 5, 1979. — March 15, 1979.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Practice, Civil*, Motion to dismiss. *Pleading, Civil*, Complaint. *Truth-in-Lending Act.*

A complaint seeking relief under the Truth-in-Lending Act, G. L. c. 140C, which failed to allege that the credit was extended primarily for agricultural purposes within the meaning of § 1(*b*) or that the defendant was a creditor, as defined in § 1(*l*), failed to state a claim upon which relief could be granted. [198-202]

CIVIL ACTION commenced in the Superior Court on May 23, 1978.

The case was heard by *Chmielinski, J.*, on a motion to dismiss.

*David S. Fox* for the plaintiffs.

*Herbert F. Lach, Jr.*, for the defendant.

PERRETTA, J. The plaintiffs, Bass River Lobsters, Inc., and two of its officers, brought suit under G. L. c. 231A,

---

[1] Donald A. Bartlett, Jr., and Cynthia K. Bartlett.

seeking a determination that a promissory note they had executed in the defendant's favor violated the disclosure requirements of G. L. c. 140C, inserted by St. 1969, c. 517, § 1, commonly known as the Truth-in-Lending Act. They also sought the civil penalty prescribed by § 10(b) of the statute. A judge granted the defendant's motion to dismiss for failure to state a claim (Mass.R.Civ.P. 12[b][6], 365 Mass. 755 [1974]), but allowed the plaintiffs "leave to file a motion to amend together with proposed amendment." This subsequent motion was denied, and a judgment of dismissal was entered. The plaintiffs appeal, claiming error in the rulings on these two motions. We affirm the judgment.

The plaintiffs argue that their motion to amend should have been allowed because "leave shall be freely given when justice so requires." Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). Notwithstanding the liberality of rule 15(a) "a judge properly may deny a motion to amend because the complaint as amended would fail to state a claim on which relief could be granted." *Jessie* v. *Boynton*, 372 Mass. 293, 295 (1977).

The proposed amended complaint alleges that the plaintiffs are engaged in the business of harvesting and marketing for sale fish and shellfish. In May of 1977, they purchased the defendant's property as a location for this business. In return they gave him the promissory note which they now claim violates the mandates of G. L. c. 140C, §§ 3, 4, and 5, entitling them to the civil penalty set forth in § 10(b),[2] and which was secured by a second mortgage on that property.

---

[2] General Laws c. 140C, § 10(b), as amended by St. 1972, c. 229, § 9, provides: "(b) Any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this chapter or any rule or regulation made thereunder by the commissioner to be disclosed to that person shall be liable to that person in an amount equal twice the amount of the finance charge in connection with the transaction, except that the liability under this clause shall not be less than one hundred dollars nor more than one thousand dollars, and in the case of any successful action to enforce such liability, the costs of the action together with a reasonable attor-

While both the original and amended complaints sought a "determination" that the defendant had violated the disclosure provisions of the statute, the amended complaint, unlike the original one, made no reference to G. L. c. 231A. If we view the amended complaint as seeking a declaration pursuant to c. 231A, then the denial of the motion to amend was proper because the plaintiff had failed to "allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). *Holden* v. *Division of Water Pollution Control*, 6 Mass. App. Ct. 423, 428 (1978). If we view the amended complaint as seeking relief directly under c. 140C, the denial of the motion to amend was still proper because "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). In either event, because the sole controversy or claim was based upon alleged violations of c. 140C, the denial was proper, as there was no factual averment from which it could be found that the transaction falls within the scope of the statute.

In these circumstances the defendant would be liable under § 10(*b*) only if the amount financed was $25,000 or less,[3] the credit was extended primarily for agricultural

---

ney's fee as determined by the court, but a creditor may not be held liable in any action brought under this subsection, if he shows by a preponderance of evidence that such violation was not intentional and resulted from a bona fide error in a mathematical computation, or in the layout or format, size of type or order of clauses contained in such disclosure statement."

[3] General Laws c. 140C, § 2(*e*), inserted St. 1975, c. 592, § 1, provides: "This chapter shall not apply to the following:— . . . (*e*) Credit transactions primarily for agricultural purposes in which the total amount to be financed exceeds twenty-five thousand dollars."

purposes,[4] and the defendant was a creditor,[5] each as defined by the statute. Although the loan, which was for $22,500, does not exceed the maximum amount set by § 2(*e*), the plaintiffs do not claim either that the loan was for an agricultural purpose within the meaning of § 1(*b*), or that the defendant is a creditor, as defined in § 1(*l*). Harvesting and marketing fish become an agricultural pursuit *only* when they are done by a natural person[6] who cultivates, plants, propagates, or nurtures those products. This limitation on the meaning of agricultural purpose is not insignificant, as it serves to narrow the otherwise broad scope of the definition.[7] The plaintiffs nowhere claim that they cultivate, plant, propagate, or nurture those products which they harvest and market, nor do they allege facts from which such activities could be inferred. They have, therefore, failed to allege that credit was extended for an agricultural purpose.

[4] General Laws c. 140C, § 1(*b*), gives the following definition of "agricultural purpose": "a purpose related to the production, harvest, exhibition, marketing, transportation, processing or manufacture of agricultural products by a natural person who cultivates, plants, propagates or nurtures those agricultural products. 'Agricultural products' includes agricultural, horticultural, viticultural and dairy products, livestock, wildlife, poultry, bees, forest products, fish and shellfish, and any products thereof, including processed and manufactured products, and any and all products raised or produced on farms and any processed or manufactured products thereof."

[5] General Laws c. 140C, § 1(*l*), as appearing in St. 1977, c. 52, § 4, gives the following definition of "creditor," in pertinent part: "a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit, which is payable by agreement in more than four instalments, or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise."

[6] The definition of "person" under G. L. c. 140C, § 1(*v*) distinguishes a "natural person" from a corporation, which is an "organization" under § 1(*s*). We need not determine whether Bass River, joined with two natural persons who are also officers and directors, is precluded from maintaining this action because it is not a natural person.

[7] See Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.2(e) (1978); Uniform Consumer Credit Code § 1.301(4); and 7 Uniform Laws Annot. U.C.C., Comment to § 1.301, at 637-638 (Master ed. 1978).

There is no doubt that the plaintiffs have pleaded an extension of credit by the defendant (see G. L. c. 140C, § 1[e]), but that is not sufficient, as § 10(b) pertains only to creditors, as defined by § 1(l). The plaintiffs make no allegations which, if proved, would establish that the defendant is such. Section 1(l) limits the application of § 10(b) to one "who in the ordinary course of business regularly extends" credit, thereby exempting those who do so as "an occasional, isolated, and incidental portion of their business." *Eby* v. *Reb Realty, Inc.*, 495 F.2d 646, 649 (9th Cir. 1974). See Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.2(s) (1978). Such an exemption would also apply to an isolated extension of credit for a purpose unrelated to a defendant's business, as may well have been the case here.

We deem these factual omissions to be fatal to the amended complaint, and in so doing we have construed our statute with an eye toward the "substantially similar" Federal statute (15 U.S.C. §§ 1601 et seq. [1976]) and interpretations thereunder. Such guidance is proper. *Lynch* v. *Signal Fin. Co.* 367 Mass. 503, 505 (1975); *McKinney* v. *Liberty Mut. Ins. Co.*, 1 Mass. App. Ct. 569, 572 (1973); *Carter* v. *Empire Mut. Ins. Co.*, 6 Mass. App. Ct. 114, 129 n.15 (1978). A literal interpretation of these definitions promotes, rather than frustrates, the basic purpose of the statute, which is to create greater competition among consumer credit finance institutions and organizations by mandating disclosure of credit cost data. 15 U.S.C. § 1601. *Carter*, 6 Mass. App. Ct. at 128. None of the facts alleged could, if proved, establish this to be other than strictly a private transaction not within the purview of the statute. Compare *Lantner* v. *Carson*, 374 Mass. 606, 607-608 (1978), with *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975). The motion to amend was properly denied.

Because the judgment rests upon the allowance of the motion to dismiss for failure to state a claim, we also pass upon the propriety of that ruling. The defendant's motion

was based upon the sole contention that the loan was a business transaction dealing with a mortgage on commercial property. Supporting affidavits and exhibits were attached to the motion. The plaintiffs filed a motion which sought to have the motion to dismiss treated as one for summary judgment, requiring the matter to be reassigned for hearing in order that the plaintiffs be given notice, an opportunity to present further material, and a hearing. See and compare Mass.R.Civ.P. 12(b) with 56, 365 Mass. 755, 824 (1974). See also *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894-895 (1977). The defendant, who did not receive a copy of the plaintiffs' motion until the day his own motion was heard, prepared and presented to the plaintiffs a handwritten "memorandum in reply," specifying that the complaint failed to show both that the loan was for an "agricultural purpose" and that the defendant was a "creditor." Allowance of the plaintiffs' demand for rule 56 treatment would have been required *if* the judge included the affidavits and exhibits in his consideration of the motion to dismiss. However, the record amply demonstrates the basis for the court's ruling (*Jessie* v. *Boynton*, 372 Mass. at 295), and it was not necessary to resort to matters outside the pleadings in allowing the motion to dismiss. Even if we were to assume that the affidavits and exhibits were considered, we fail to see how the plaintiffs were prejudiced. No judgment was entered that day, and they were given three weeks to amend their complaints. By virtue of the defendant's specification of the material omissions from the complaint, they had the opportunity to present sufficient allegations. Under these circumstances there was no error.

*Judgment affirmed.*