Fahey, Elizabeth M., J.
The plaintiff, Willie Evans, filed this action as the executor of the estate of his mother, Marie R. Evans, who died on June 20, 2002. The plaintiff asserted various claims against Lorillard Tobacco Company (“Lorillard”) seeking damages for Marie’s death, which he alleged was caused by her long-term smoking habit. The case went to trial in late 2010, resulting in a verdict against Lorillard totaling $116 million. By order dated September 6, 2011, this court found Lorillard liable under G.L.c. 93A. The plaintiff now seeks his attorneys fees in the amount of $4,189,828.10 and costs of $368,986.87 under that statute. For the following reasons, this court awards to the plaintiff $2,371,414.69 in attorneys fees and $225,962.98 in costs.
BACKGROUND
In his complaint, the plaintiff asserted the following eight claims: (1) fraud and misrepresentation (Count I); (2) voluntary undertaking of duty (Count II): (3) breach of warranty (Count III); (4) public nuisance (Count IV); (5) battery (Count V); (6) violation of G.L.c. 93A, §9 (Count VI); (7) negligence (Count VII); and (8) wrongful death (Count VIII). At the motion to dismiss stage, the court (Troy, J.) dismissed parts of Count I, Count VI, and Count VII [22 Mass. L. Rptr. 91]. At the summary judgment stage, the court (Giles, J.) dismissed Count I and Count IV in their entirety, and dismissed parts of Count VI, Count VII, and Count VIII. The plaintiff voluntarily withdrew Count V during jury deliberations. Thus, judgment was rendered at trial on five of the eight claims, only two of which (Count II and Count 111) survived in whole part as pled.
This court reserved for itself judgment on Count VI, the G.L.c. 93A claim, which proceeded on all grounds asserted in the complaint except for fraud/misrepresentation and any conduct prior to November 13, 1969.[2] In a decision dated September 2, 2011, this court found Lorillard liable under G.L.c. 93A. It directed the plaintiff to submit an affidavit of reasonable attorneys fees and costs. The plaintiff filed the affidavit of attorney Michael D. Weisman, with accompanying exhibits, on October 14, 2011. Included are daily time logs of the hours expended by the two law firms associated with the plaintiff on this case and a list of costs.
*227 DISCUSSION
General Laws c. 93A, §9(4) provides that a party prevailing under that section “shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in connection with said action.” As specifically stated in the statute, fees and costs may only be recovered to the extent they were expended on a c. 93A claim. See id.; Miller v. Risk Mgt. Found. of Harvard Med. Insts., Inc., 36 Mass.App.Ct. 411, 421 (1994). In some cases, however, where the factual predicate for the c. 93A claim is the same as that for other claims, the court need not segregate out the fees and costs related to developing such facts. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 431 (2005) (judge could have awarded amounts related to developing “closely analogous” facts required for c. 93A and misrepresentation claims); DiMarzo v. American Mut Ins. Co., 389 Mass. 85, 106 (1983) (amounts relating to counts arising from “single chain of events” recoverable); Incase, Inc. v. Timex Corp., 421 F.Sup.2d 226, 244 (D.Mass. 2006) (not segregating amounts related to developing common facts, but segregating expenses related to trying non-93A claims).
I. Attorneys Fees
The determination of a reasonable award of attorneys fees and costs under G.L.c. 93Ais within the trial judge’s discretion. See Berman v. Linnane, 434 Mass. 301, 302-03 (2001); DiMarzo, 389 Mass. at 106. Regarding attorneys fees, “[a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorneys fee under State law. . .” Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993). The typical starting point is the lodestar measurement, which involves “multiplying the number of hours reasonably spent on the case times a reasonable hourly rate.” Id. at 324.
To determine what is a reasonable number of hours and a reasonable hourly fee, courts apply the factors outlined in Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), overruled in part on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994): “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” See Castricone v. Mical, 74 Mass.App.Ct. 591, 603 n.14 (2009) (“The lodestar computation of a reasonable volume of time can take into account the appropriate common-law fee criteria incorporated for c. 93A purposes by Linthicum . . .”). Siegel v. Berkshire Life Ins. Co., 64 Mass.App.Ct. 698, 706 n.8 (2005), citing Linthicum, 379 Mass. at 388-89 (“Under the lodestar method, other, formerly separate considerations . . . come into play indirectly. For example, the complexity of the case is likely to be reflected in the judge’s finding as to the amount of time reasonably spent on the matter, and the ability and reputation of the attorney are likely to be reflected in the judge’s finding as to a reasonable hourly rate”). No single factor is determinative of a reasonable fee, “and a factor-by-factor analysis, although helpful, is not required.” See Berman, 434 Mass. at 303.
In his affidavit, Attorney Weisman outlines the lodestar measurement the plaintiff seeks in this case, listing the total amount of hours spent (9,485.1) and hourly rates for each timekeeper involved (ranging from $180 to $600).[3] Lorillard takes issue with the plaintiffs lodestar calculation for various reasons, one of which is that he seeks hourly rates higher than those the timekeepers actually charged. For example, the submitted materials indicate that attorney Rebecca P. McIntyre’s hourly rate ranged from $300 to $375 on this case, whereas the plaintiff seeks to recover for Attorney McIntyre’s services at an hourly rate of $550.[4] The plaintiff argues that the hourly rates it seeks constitute fair market rates for attorneys with similar experience. See Haddad v. Wal-Mart Stores, Inc., 455 Mass. 1024, 1026 (2010), quoting Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978) (“[Wjhere the award is provided for by statute and is assessed against the party having no contractual relationship with the attorney involved, the standard of reasonableness depends not on what the attorney usually charges but, rather, on what his services were objectively worth”); Linthicum 379 Mass. at 389 (factors to be considered include “the usual price charged for similar services by other attorneys in the same area”).
While the market rate for a timekeeper’s services is certainly relevant, the plaintiff has not submitted any affidavit other than that of Attorney Weisman addressing the going rates for relevant timekeepers in the Boston area.[5] See T&D Video, Inc. v. Revere, 66 Mass.App.Ct. 461, 477 (2006), reversed in part on other grounds by 450 Mass. 107 (2007) (“The fee applicant bears the burden ... of establishing the market rate”). Compare Haddad, 455 Mass. at 1026 (affidavits from several experienced attorneys “set forth comparable hourly billing rates charged ordinarily by attorneys in this field”); T&D Video, Inc., 66 Mass.App.Ct. at 480 (“Affidavits of attorneys knowledgeable with respect to the local culture regarding fees charged in civil rights cases supported the[ ] rates” counsel charged). Despite this failure, though, this court is able to determine reasonable rates by applying its own knowledge and observations, at least as to the three attorneys who appeared before me. See Heller, 376 Mass. at 629 (presiding judge “can discern, from his own experience as a judge and expertise as a lawyer, the amount that the attorney should be paid”); Heath v. Silvia & Silvia Assocs., Inc., 2007 WL 3259150 at *4 (Mass.Super. 2007) (Henry, J.) (based on his civil litigation experience and trial observations, judge determined that hours expended were excessive); Incase, Inc., 421 F.Sup.2d at 243 (despite lack of detail in submis *228 sions supporting attorney fee request, judge made reasonable award based in part on his own observations).
In considering the reputations and abilities of the plaintiffs three trial attorneys in this case, see Linthicum, 379 Mass. at 389, along with my own knowledge of attorneys’ going rates, this court makes the following remarks. This court is familiar with Attorney Weisman’s reputation as an excellent trial attorney, and his superb work at trial matched his reputation. While before trial I was unfamiliar with the reputations of Attorney Frisardi and Attorney Kinscherf, but, based on my own observations during this case, I consider them also to be very skilled, hard working and conscientious attorneys. As such, this court concludes that the following hourly rates are appropriate: $600 for Attorney Weisman, $460 for Attorney Frisardi, and $300 for Attorney Kinscherf.[6],[7] While the plaintiffs submissions show that Attorney Weisman’s actual hourly rate changed over the course of this case, the $600 hourly rate this court has deemed appropriate will apply to the hours he expended throughout the case for several reasons. First, Attorney Weisman took this very complex and novel case on a contingency basis despite knowing that prior tobacco litigation had been almost completely unsuccessful in garnering actual monetary damages for plaintiffs. Compare Fontaine, 415 Mass. at 324, 326 (noting that “[i]n limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment,” but finding no such circumstances where case was simple, had reasonably good chance of success, and involved no novel legal issues). Second, Attorney Weisman has been working on this case for almost ten years and has accordingly waited a long time for compensation. See Grendel’s Den, Inc. v. Larkin, 749 F.2d 945, 955 (1st Cir. 1984) (“[T]he rate of $125 per hour, which is clearly reasonable for the last three years, can fairly be applied to the early years. Any excess in the rate for those years should be viewed as a rough offset to the fact that [counsel] has had to wait for so many years to receive his compensation”).
The primary reason why this court awards each of the three trial counsel an hourly rate higher than their usual rate, more in line with what this court appreciates is the actual market rate for attorneys of their caliber in the Boston-area, is the exemplary skill, advocacy, and work ethic each demonstrated in the courtroom and in the pleadings submitted on their client’s behalf.
Regarding the other timekeepers who worked on this case, this court declines to increase their hourly rates where it did not have the opportunity to personally observe their skills. The plaintiffs submissions indicate the actual hourly rates charged for some of these timekeepers, but not for others. In particular, there is no information regarding the actual hourly rates for attorneys Brendan Faulkner and Franklin Runge at Weisman & McIntyre, P.C. (“W&M”) and for paralegal Susan Mello at Davis Malm & D’Agostine P.C. (“DM&D”). While Attorney Weisman provides some information in his affidavit regarding the range of hourly fees for associates and paralegals in the Boston area, this information applies to medium to large law firms such as DM&D, not to a small firm such as W&M. Accordingly, this court must determine on its own what are reasonable hourly rates for Attorney Faulkner, Attorney Runge, and the paralegals.
As for Attorney Faulkner, Attorney Weisman’s affidavit indicates that he had approximately eight years of plaintiff-side personal injury experience before joining W&M. Where W&M charged an hourly rate of $150-$200 for attorney Emiliano Mazlen, who also had approximately eight years of prior experience, this court finds that an appropriate hourly rate for Attorney Faulkner is $175.[8]
Attorney Weisman’s affidavit indicates that Attorney Runge joined W&M a few years after graduating law school in 2003. Other than a clerkship with the Massachusetts Probate and Family Court, there is no prior experience listed for Attorney Runge. As such, $150 per hour is a reasonable rate for him.
Regarding the paralegals who worked on this case, “paralegal work is to be compensated at the prevailing market rate for such services, not the rate normally billed by that particular [paralegal].” Roberts v. Department of State Police for Commonwealth of Mass., 2002 WL 31862711 at *5 (Mass.Super. 2002) [15 Mass. L. Rptr. 462] (Houston, J.). As noted above, the only evidence regarding the market rate for paralegals is Attorney Weisman’s own affidavit, which provides that at medium to large Boston-area firms, hourly paralegal rates range from $125 to $340. The plaintiff seeks an hourly rate of $180. His submissions, however, indicate that the W&M paralegals’ hourly rates ranged from $85 to $100.[9] Due to the lack of market-rate evidence other than Attorney Weisman’s own averment, and to the lack of information regarding the W&M paralegals’ experience, this court finds it appropriate to set a $100 hour rate for the time expended by W&M’s paralegals on this case. See Roberts, 2002 WL 31862711 at *5 (in 2002, setting hourly rate of $75 for experienced paralegal based on judge’s knowledge and research where attorney averred hourly market rate of $145). As for Paralegal Mello at DM&D, this court’s evaluation determines that an hourly rate of $ 125 is appropriate.
Finally, this court addresses the rates of those timekeepers whose actual hourly rates are reflected in the plaintiffs submissions but will not be increased because this court has no personal knowledge of their reputations and abilities. As for Attorney McIntyre, her actual rate at W&M ranged from $300 to $375 over the approximately eight years she worked on this case. Given that Attorney McIntyre had primary day-to-day responsibility for the case for about six years and that she expended more than twice as many hours as the next highest biller, the court sets her hourly rate at $375. As noted above, Attorney Mazlen’s hourly rate *229 at W&M was $ 150 for most of his tenure with the firm; it increased to $200 only five weeks before his departure. The court therefore concludes that $150 is an appropriate rate for Attorney Mazlen. According to Attorney Weisman’s affidavit, DM&D’s current hourly rates for attorney Joshua Grossman and paralegal David Krause are $285 and $170, respectively.
Based on the above discussion, this court recalculates the lodestar measurement as follows:
Attorney Weisman: 1,381.19 hours at $600 per hour $ 828,714.00
Attorney Frisardi: 888.8 hours at $460 per hour $ 408,848.00
Attorney Kinscherf: 582.7 hours at $300 per hour $ 174,810.00
Attorney Grossman: 735.1 hours at $285 per hour $ 209,503.50
Attorney McIntyre: 2,992.78 hours at $375 per hour $1,122,292.50
Attorney Mazlen: 599.56 hours at $150 per hour $ 89,934.00
Attorney Faulkner: 244.73 hours at $175 per hour $ 42,827.75
Attorney Runge: 227.51 hours at $150 per hour $ 34,126.50
Paralegal Kraus: 816.4 hours at $170 per hour $ 138,788.00
Paralegal Mello: 416 hours at $125 per hour $ 52,000.00
W&M paralegals: 600.42 hours at $100 per hour $ 60.042.00
Total: $3,161,886.25
With an appropriate lodestar measurement now in place, this court must determine whether this measurement must be reduced for any reason.[10] See Layer Eight Sys., Inc. v. Daley, 1994 WL 902946 at *1 (Mass.Super. 2004) (McHugh, J.) (referring to initial lodestar measurement as “starting point" for determining attorneys fee award and then reducing measurement because of unsuccessful claims).
As Lorillard discusses in its opposition to the plaintiffs request, there are various bases to reduce an award of attorneys fees. They include (1) the use of “block-billing” in an attorney’s time records, which refers to listing multiple tasks within a single large block of time or listing a vague description of a single activity within a large block of time, see Ellis v. Varney, 2005 WL 1009634 at *3 & n.6, 6 (Mass.Super. 2005) (Fecteau, J.) [19 Mass. L. Rptr. 260] (reducing fee request by one-third in part because of block-billing); Roberts, 2002 WL 31862711 at *4 (reducing lodestar hours by 15% to compensate for vague block-billing); (2) the inclusion of time expended on unsuccessful claims, see Layer Eight Sys., Inc., 1994 WL 902946 at *1-2 (reducing lodestar hours for work on unsuccessful claims); (3) the time expended trying claims unrelated to the G.L.c. 93A claim, see Incase, Inc., 421 F.Sup.2d at 244 (deducting time spent on trying non-93A claims); and (4) the inclusion of excessive time, see Haddad, 455 Mass. at 1027 (deducting from lodestar hours excessive time spent on tasks such as preparing for oral argument) ; Heath, 2007WL 3259150 at *4 (reducing lodestar hours by 50% to compensate for excessive time spent).[11]
This court concludes that a wholesale reduction is warranted based on some of the bases listed above. Some of the time entries for the plaintiffs attorneys are in the form of block billing.[12] As noted in the Background section above, there were also unsuccessful claims or parts of claims in the plaintiffs complaint and one claim (Count V: battery) that the plaintiff voluntarily withdrew. While the facts underlying the plaintiffs G.L.c. 93A claim and his other claims were so intertwined as to make it unnecessary to segregate out the time spent developing those facts, the time spent actually trying the non-93A claims may not be included in the final attorneys fees award. Finally, this court recognizes the complexify and unusual nature of this tobacco litigation which surely required many hours of work and I specifically do not find that there was any excessive time spent on certain tasks, especially given Lorillard’s “scorched earth” trial and trial preparation practices.[13]
Because this court is not required to review each of the time entries the plaintiff submitted in order to determine how to reduce his requested fee award, see Twin Fires Inv., LLC, 445 Mass. at 429, 431, it finds that a wholesale 25% reduction of the lodestar measurement is appropriate, given the factors just outlined. Accordingly, the plaintiff is entitled to an award of reasonable attorneys fees under G.L.c. 93A, §9(4) in the amount of $2,371,414.69.
II. Costs
The plaintiff seeks $368,986.87 in costs for various categories of expenses. Before awarding the cost of investigators ($38,416.55) or the cost of trial support ($5,000), this court requires affidavits from persons providing those services outlining the services and fees charged to the plaintiff.[14]
This court finds that the following requested costs are reasonable and will therefore award them: (1) $24.75 for a certified copy of the Engle decision; (2) $174,356.96 for expert fees;[15] (3) $275.00 for filing fees; (4) $10,904.94 for legal research; (5) $380.76 for medical and taxrecords; (6) $22,343.76 for deposition transcripts; (7) $2,656.28 for hearing transcripts; (8) $11,801.53 for travel expenses;[16] and (9) $3,219.00 for deposition videos.
This court finds that the following requested fees are unreasonable and unnecessaiy and will therefore not award them: (1) $4,862.00 for a shadow jury;[17] and (2) $74,421.40 for daily trial transcripts.
Finally, this court treats the following expenses as unrecoverable overhead: (1) $16,686.05 for copying; (2) $2,074.20 for delivery and postage; (3) $511.96 for meals; and (4) $538.00 for parking. See Heath, 2007 WL 3259150 at *4 (“Much of what they seek is what should be considered firm overhead (photocopying; postage and Fedex charges; telephone and fax charges; travel, automobile, taxi, and parking ex *230 penses; meals; Westlaw; etc.) and I will not make an award of those amounts”); Layer Eight Sys., Inc., 1994 WL 902946 at *2 (“Indeed, some of the costs, i.e., telephone, mail, and computer usage and secretarial overtime, are clearly overhead, not costs”). But see Roberts, 2002 WL 31862711 at *6, citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2nd Cir. 1987) (recoverable out-of-pocket expenses include photocopying, travel, telephone, postage, and tolls).
The total amount of costs the court awards to the plaintiff is $225,962.98.
ORDER
Based on the foregoing, it is hereby ORDERED that the plaintiff be awarded $2,371,414.69 in attorneys fees and $225,962.98 in costs. The plaintiff has thirty-five (35) days from the entry of this order to submit affidavits supporting his request for costs associated with investigators and trial support. It is further ORDERED that Lorillard’s oral motion to strike certain paragraphs of Attorney Weisman’s affidavit is DENIED.

This is the date that G.L.c. 93A, a prospective remedy, was enacted. See Lewis v. Ariens Co., 434 Mass. 643, 643 n.3 (2001); Sentry Fed. Sav. Bank v. Co-operative Cent. Bank, 406 Mass. 412, 414 (1990).

These numbers include the efforts of non-attorney personnel such as a licensed clinical psychologist and paralegals, who expended a total of 1,832.82 hours on the case.

Attorney McIntyre worked on the case from its inception through October 2010.

Attorney Weisman briefly outlines his familiarity with market rates in paragraph 40 of his affidavit, noting that, “[n]ot surprisingly, there is a wide range of rates.” This court accepts much of the content of defendant’s expert Attorney Curley except that, in all likelihood, Attorney Curley’s familiarity with rates is based on his extensive defense experience, often insurance defense experience, which at least to this court’s knowledge and experience, is lower than prevailing market rates.

To the best of my memory, this court has never awarded an hourly rate of more than $400 in an award of attorneys fees. I make an exception here, however, given the skill exhibited by the plaintiffs trial attorneys who outmaneuvered Lorillard’s attorneys despite being outnumbered — and the remarkable result they achieved. See Mulhem v. Roach, 398 Mass. 18, 30 (1986) (large fee warranted in part because result obtained by attorney was “almost miraculous” and very rare).

During the hearing, Lorillard’s counsel claimed, as it did in its written opposition, that the plaintiffs request for attorneys fees was excessive. When asked by the court their hourly rates, as one basis to assess “excessive,” three of the four defense counsel incredibly indicated they did not recall or did not know their hourly rate or even an approximation of their hourly rate. The fourth defense counsel at the hearing provided such a broad range, a range of over several hundred dollars, of his hourly rate as not to be helpful.

This rate takes into consideration the fact that Attorney Mazlen’s hourly rate was $150 until just five weeks before he left the firm. A slightly higher rate for Attorney Faulkner is reasonable because he joined W&M after Attorney Mazlen left and continued to work there until late 2007, during which time rates would likely have gone up in the market.

Three people — Tina, Jamie, and Melissa — appear with regularity in W&M’s time records conducting paralegal-type tasks at an hourly rate of $75-$ 100.

Courts may also enhance the lodestar measurement to reflect considerations such as the risk involved in the case or the results obtained. See Fontaine, 415 Mass. at 324; T&D Video, Inc., 66 Mass.App.Ct. at 477 (under 42 U.S.C. §1988, court awarding attorneys fees makes initial lodestar calculation and then “may adjust the fee upward or downward based on other considerations, including the results obtained,” and “Massachusetts cases governing attorneys fees awards reflect similar considerations”). This court has already incorporated such enhancement in the lodestar measurement itself where it has increased the usual hourly rates of Attorney Weisman, Attorney Frisardi and Attorney Kinscherf to more accurately reflect their excellent skills and the broader market rate for attorneys of their caliber.

In most of the cases cited here, the court applied the relevant reduction to the number of hours used in the lodestar measurement, often going through each phase of litigation. Given the number of timekeepers and hours involved in this case and the non-specificity of the timekeepers’ records, however, this court finds it impracticable to adopt this method of determining an appropriate attorneys fee award. See Twin Fires Inv., LLC, 445 Mass. at 428-29, 431 (where “plaintiffs’ submission fell short, far short, of their obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work,” judge not obligated to “sort out” submission). Thus, it will apply a wholesale reduction to the lodestar measurement it has calculated above.

The entries for the timekeepers at DM&D in particular are problematic in terms of block-billing.

For example, Attorney Weisman, Attorney Frisardi and Attorney Grossman spent up to 130.4 hours total on the plaintiffs oppositions to Lorillard’s motions in limine, which this court finds is a reasonable time given the nature, breadth, and volume of Lorillard’s motions in limine, as well as plaintiffs counsel’s success and skill in their written and oral advocacy.

The plaintiff has twenty (20) days from the date of this decision to provide such affidavits/pleadings to Loriflard pursuant to Rule 9A.

Lorillard asserts that it should not have to pay the fees of experts who were withdrawn before deposition or trial, but it has not cited any caselaw excluding from an award of costs the fees for experts who did not testify. In addition, though some experts did not testify at trial due to defendant’s stipulation on the eve of trial that Marie Evans died of small cell lung cancer caused by smoking, the plaintiff was required to have such experts, given the plaintiffs claims and the defendant’s original defenses. Additionally, Loriflard argues that it should not have to pay for experts who contributed to portions of the case unrelated to the c. 93A claim. As the court concluded above, however, the factual predicates for the c. 93A claim and the other claims are intertwined so as to make it unnecessary to separate out the expert fees.

This amount excludes costs requested for parking, meals, and taxis during the trial, which, pursuant to the cases cited in the penultimate paragraph of this memorandum, the court treats as unrecoverable overhead.

The cost for a shadowjury clearly relates only to the jury trial which is not compensable pursuant to c. 93A.