Budd, Kimberly S., J.
The defendants, Dennis Colameta (“Colameta”) and Monument Data Solution, LLC (“Monument”) (collectively “defendants”), move for an award of attorneys fees, and expenses and costs. The defendants contend that they are entitled to such an award pursuant to the provisions of Colameta’s employment agreement with the plaintiff, Protégé Software Services, Inc. (“Protégé”), as well as under Mass.R.Civ.P. 54andG.L.c. 261. Protégé disputes that the defendants are entitled to attorneys fees, and contends that it is entitled to attorneys fees because of the defendants’ misconduct during discovery. Protégé moves for reconsideration of the court’s earlier denial of its motion to amend its complaint to conform to the pleadings. For the following reasons, the defendants’ motion will be ALLOWED in part and DENIED in part; and Protégé’s motion for reconsideration will be DENIED.
BACKGROUND
On December 27, 2006, Colameta and Protégé entered into an employment agreement (“Employment Agreement”). The Employment Agreement contains a section entitled “Non-Competition.” The Non-Competition section provides that during his employment and for one year after termination, Colameta shall not engage in any business providing technology or professional services within the defined territory; sell or aid in the sale of any item similar to a Protégé product; solicit any business from a Protégé customer; or recruit any Protégé employee. The Non-Competition section further provides:
All agreements, covenants and provisions of this Non-Competition section constitute a series of separate covenants. If any provisions hereof are determined to be unenforceable, the same shall be deemed deleted, but only with respect to the operation of this section in the particular jurisdiction which such determination is made. The foregoing notwithstanding, if any provision hereof is determined to be unenforceable because of its scope in terms of territory or duration in time of business activities, but may be enforceable by reason of limitations thereon, such limitations may be imposed so that such provision, as limited, will be enforceable to the fullest extent permissible under the law applied consistent with public policy in the applicable jurisdiction. The Executive understands and agrees that the provisions of this agreement under Arbitration to the contrary notwithstanding, any violation of this section may not be susceptible to an award for damages and accordingly, that relief for any such violation by him may be the subject of an injunction issued by a court of competent jurisdiction. If any such action is brought by the company to enforce, or seek damages for the violation of the provisions of this section, the unsuccessful party in such litigation shall pay to the successful party all costs and expenses, including actual attorneys fees, incurred therein by such successful party and such costs, expenses and attorneys fees shall be included in and as a part of such judgment or award; and the determination by the judge in such action shall be conclusive on the matter of which party is successful for purposes thereof.
On March 5, 2009, Colameta resigned irom Protégé and became the president of Monument, a Protégé competitor. Monument subsequently entered into contracts with various Protégé customers, including TransAct Technologies (‘TransAct’j.
On August 14, 2009, Protégé filed a complaint against Colameta alleging breach of non-competition and non-solicitation agreement (count I), breach of non-disclosure agreement (count II), and breach of agreement (count V). Protégé also brought claims against Monument for intentional interference with advantageous business relationships (count III), intentional interference with contract (count IV), and violation of G.L.c. 93A (count VII). Protégé brought claims for injunctive relief (count VI) and misappropri *166 ation of trade secrets (count VIII) against both defendants.
On August 24, 2009, the court granted a temporary restraining order preventing Colameta from working for Monument, but denied further injunctive relief on October 26, 2009.
On October 29, 2009, the defendants filed an answer to Protégé’s complaint, and Colameta filed a counterclaim for breach of the Employment Agreement for reducing his salary. The parties filed cross motions for summary judgment on October 12, 2011. On July 16, 2012, the court (Kirpalani, J.) issued a decision that resolved all of the claims against the defendants except for count VIII for misappropriation. The court found that Protégé breached the Employment Agreement, which discharged Colameta from compliance. See Protégé Software Servs., Inc. v. Colameta, 30 Mass. L. Rptr. 127, 2012 WL 3030268 at *11 (Mass.Super. 2012). Protégé filed a motion for reconsideration of the court’s summary judgment order on August 27, 2012. The court (Kirpalani, J.) denied the motion for reconsideration on December 20, 2012.
At trial, a jury determined that the defendants were not liable for misappropriation, and awarded $8,461 in damages to Colameta on his counterclaim for breach of the Employment Agreement.
On August 6, 2013, Protégé filed a motion to amend the pleadings to conform to the evidence. On January 22, 2014, the court (Budd, J.) denied Protégé’s motion to amend.
DISCUSSION
A. Defendants’ Request for Attorneys Fees
The defendants contend that they are entitled to attorneys fees pursuant to the Employment Agreement. The defendants seek a total of $469,227.50 in legal fees, $68,625 with Atlas & Atlas, and $400,602.50 with Cooley Manion Jones. Attorneys fees are not ordinarily recoverable in the “absence of statute, court rule, enforceable contract or stipulation providing therefore.” Bournewood Hosp., Inc. v. Massachusetts Comm’n Against Discrimination, 371 Mass. 303, 308 (1976); Leventhal v. Krinsky, 325 Mass. 336, 341 (1950) (“Reasonable attorneys fees have been frequently recovered where the contract between the parties provides for their payment. . .”). A determination of attorneys fees owed under a contractual provision is a question of contract interpretation. See Accusoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001).
Attorneys fees awards, including those pursuant to a contractual provision, are subj ect to a determination of reasonableness. See Citizens Bank of Mass. v. Travers, 69 Mass.App.Ct. 174, 176-77 (2007); see also Trustees of Tufts College v. Ramsdell, 28 Mass.App.Ct. 584, 585 (1990) (“Under Massachusetts law, a borrower may be liable for attorneys fees if the note expressly provides for them, but they are limited to an amount that is found to be fair and reasonable”); but see Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 80 (1991) (holding that agreement provided for attorneys fees, not reasonable attorneys fees as determined by a judge). “What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge.” Berman v. Linnane, 434 Mass. 301, 302-03 (2001). “When determining a reasonable attorneys fee, the focus is not the bill submitted ... or the amount in controversy .. . but several factors, including ‘the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and abilily of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Id. at 303, quoting Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). No single factor is determinative and a factor-by-factor analysis is not required. Berman, 434 Mass. at 303; see also Metavante Corp. v. Emigrant Savs. Bank, 619 F.3d 748, 774 (7th Cir. 2010) (holding that individual scrutiny of line-item entries is inappropriate and unnecessary in contractual fee-shifting cases). ‘The adversity and complexity of litigation can propel the amount of reasonably necessary legal work beyond a proportionate relationship with an ultimate damages verdict.” A.C. Vaccaro, Inc. v. Vaccaro, 80 Mass.App.Ct. 635, 643 (2011).
The defendants contend that as the prevailing party, under the terms of the Employment Agreement, they are entitled to all fees and costs from the litigation. Here, the defendants were clearly the prevailing party, having succeeded on their counterclaim and all of Protégé’s claims, in particular, the claim for breach of the Non-Competition section. The Employment Agreement states that the determination of the judge is conclusive on this point. Further, the Employment Agreement clearly provides that the prevailing party is only entitled to fees and costs in an action brought by Protégé to enforce the Non-Competition section, and Protégé’s initial case constituted such an action, as Protégé first brought this case, including the claim for breach of the Non-Competition section.
Protégé argues that Monument was not a party to the Employment Agreement and thus, is not entitled to attorneys fees under the Employment Agreement. Counsel for defendants submitted three invoices for services to Colameta, and the rest of the invoices were billed to Monument. “Attorneys fees are ‘incurred’ when a party renders himself liable to pay for such fees.” Northern Assocs. v. Kiley, 57 Mass.App.Ct. 874, 877 (2003). No attorneys fees are incurred when legal services are provided without expectation of compensation. Lincoln St. Realty Co. v. Green, 374 Mass. 630, 631-32 (1978) (holding that publicly-funded legal service organization that did not bill clients was not entitled to attorneys fees under contractual fee-shifting provision). A prevailing party is entitled to attorneys fees under a fee-shifting provision even when a *167 third party paid the litigation costs and the prevailing party was not personally liable. Genuine Parts Co. v. Autoparts Int'l, Inc., 27 Mass. L. Rptr. 144, 2010 WL 2764711 at *3-4 (Mass.Super. 2010).
The fact that the defense costs were paid by Monument does not bar the recovery of attorneys fees. Furthermore, it is unnecessary to allocate attorneys fees between Colameta and Monument where a successful defense by Colameta was intertwined with Monument’s success. See Genuine Parts Co., 2010 WL 2764711 at *4 (finding apportioning of legal fees unnecessary where success of party paying litigation costs was byproduct of success of party contractually entitled to attorneys fees).
Protégé argues that the defendants are not entitled to attorneys fees because the court’s summary judgment ruling was based on other sections of the Employment Agreement, not the Non-Competition section. Protégé contends that the Employment Agreement did not contemplate awarding fees to the successful party in an action brought by Colameta that would render the Non-Competition section void. Colameta’s counterclaim for breach of contract was, however, intertwined with his defense of the claim for breach of the Non-Competition section. The court entered summary judgment on the claim for breach of the Non-Competition section specifically because Colameta was successful on his breach of contract counterclaim. If Colameta had not brought a counterclaim, but merely argued that his compliance was excused by Protégé’s breach, he would still have prevailed on Protégé’s claim for breach of the Non-Competition section and would clearly be entitled to attorneys fees. Thus, the counterclaim does not bar the defendants from receiving attorneys fees under the Employment Agreement.
Protégé contends that the Employment Agreement only allows for attorneys fees on claims related to the Non-Competition section, and the defendants are not entitled to attorneys fees for defending a claim of misappropriation of trade secrets. Once the court granted summary judgment, the case no longer involved enforcement of the Non-Competition section. At that point, the defendants were the prevailing party under the Employment Agreement, and they are only entitled to attorneys fees incurred at that point. If Protégé had succeeded at trial on the misappropriation claim, it would not have been entitled to attorneys fees incurred at trial any more than the defendants are. Certainly, the defendants would be making that argument if instead Protégé had succeeded on the misappropriation claim. The defendants argue recovery of all attorneys fees is appropriate because the misappropriation claim is factually and legally identical to Protégé’s contractual claims. While the factual basis for the misappropriation claim may well be the same as the contractual claims, that does not bring it within the scope of the Employment Agreement. The Non-Competition section allows only for attorneys fees in an action to enforce the terms of that section. Therefore, the defendants are not entitled to any attorneys fees incurred after the court denied Protégé’s motion for reconsideration of the court’s summary judgment order.
The defendants incurred attorneys fees of $202,257.50 with Atlas & Atlas and Cooley Manion Jones from the start of the case through the denial of the motion for reconsideration of the court’s decision on summary judgment. Attorneys from Cooley Manion Jones billed $133,632.50 for 586.7 hours at $450 per hour for senior attorneys and $275 per hour for associates. Atlas & Atlas billed $68,625 for 179.25 hours at $300 per hour for lead counsel, and 74.25 hours at $200 per hour for the associate. The number of hours is reasonable in light of the size and complexity of the case and the eventual outcome, and the hourly rates are appropriate for the skill of the attorneys and comparable to other area attorneys. See Berman, 434 Mass, at 303. The court finds that the defendants incurred reasonable attorneys fees of $202,257.50 in defending against Protégé’s claim.
B. Discovery Disputes
Protégé contends that the court should deny the defendants’ attorneys fees because the defendants committed discovery abuses and gave false testimony at trial. Specifically, Protégé argues that Monument’s responses to requests for production of documents in regards to its dealings with TransAct were inadequate. In its discovery responses, Monument indicated that it had a contract for services with TransAct from May 2009 to March 2010, with no profit. Monument produced a Master Services Agreement, dated April 13, 2009, with a Statement of Work attached. Prior to trial, Monument provided Protégé with information indicating that Monument had earned $500,000 in gross revenues from TransAct.
At trial, Carl Rubin (“Rubin”), Monument’s owner, testified that no work was done on the contract with TransAct and no invoices were sent to TransAct. Rubin admitted that he had testified at his deposition that Monument did perform work for Transact on the contract because he had assumed that Monument completed the work. Rubin testified that he discovered the work was not done when he looked for invoices as part of trial preparation. Colameta testified that no work was completed, delivered, or started.
After the trial, Protégé served TransAct with a subpoena. In response to the subpoena, TransAct produced an invoice dated May 8, 2009, charging $300 for two hours of work performed by “Joe M.” TransAct also produced several additional Statements of Work that identified themselves as attachments to the Master Services Agreement, and approximately 379 pages of email communications between TransAct and Monument. Neil Edwards, the information technology director for TransAct, filed an affidavit stating that *168 Monument did no work besides initial consulting and reporting its efforts to TransAct, and TransAct did not pay Monument in connection with that work.
While Rubin and Colameta’s testimony was not perfectly accurate, it is not misleading. The difference between Rubin and Colameta’s testimony that no work was done, and the evidence from TransAct which indicates that two hours of preliminary work was done, but not paid for, is hardly significant. There is no evidence to suggest that Rubin or Colameta purposefully gave inaccurate testimony. Such a minimal difference can hardly be characterized as misleading the jury. Had the jury heard that two hours of preliminary work were performed and never paid for, it would not have affected its deliberations.
Nothing produced by TransAct indicates that Monument did work that involved the misappropriation of Protégé’s trade secrets, or otherwise calls the jury verdict into question. Protégé claims that it would not have pursued the misappropriation claim had it received full discovery, but the documents also do not indicate that Protégé’s claim was plainly without merit, nor was the claim based solely on TransAct’s relationship with Monument. However, Rubin’s own testimony and the documents from TransAct do indicate that Monument’s responses to Protégé’s request for production of documents was deficient. The fact that the documents would not have affected the outcome of the trial is irrelevant to the defendants’ responsibility to provide full and complete discovery.
Therefore, the court will award Protégé $20,000 in attorneys fees as a sanction for the defendants’ inadequate discovery. Further, Protégé is entitled to attorneys fees and costs associated with filing the subpoena to TransAct for documents. See Mass.R.Civ.P. 37(a)(4); Ventresca v. Town Manager of Billerica, 68 Mass.App.Ct. 62, 65 (2007) (noting that award of attorneys fees is permissible for hearing to compel discovery or failure to produce required discovery).
C. Defendants’ Request for Costs
The defendants argue that they are entitled to an award of expenses and costs under the Employment Agreement, Mass.R.Civ.P. 54, and G.L.c. 261. The expenses and costs total $27,754.57 and cover expert fees, deposition expenses, mileage, and customary litigation expenses such as copying and postage. “In civil actions the prevailing parly shall recover his costs, except as otherwise provided.” G.L.c. 261, §1. Taxable costs are considered full compensation “even though such costs are only nominal and wholly inadequate.” Waldman v. American Honda Motor Co., Inc., 413 Mass. 320, 322 (1992), quoting MacNeil Bros. v. Cambridge Sav. Bank, 334 Mass. 360, 363 (1956).
Protégé argues that the defendants are not entitled to deposition expenses or for meals. However, those costs were incurred prior to the court’s decision on summary judgment. Therefore, they are recoverable under the terms of the Employment Agreement, which provided for all costs and expenses incurred.
The defendants seek $9,864.40 for expert fees incurred following summary judgment. Protégé also argues that the defendants are not entitled to costs for their expert, Kevin Papa, as his participation was irrelevant because he did not testify at trial. Fees for all witnesses, including expert witnesses, are governed by G.L.c. 262, §29. Waldman, 413 Mass. at 322; Johnson v. Modern Cont. Constr. Co., 49 Mass.App.Ct. 545, 550-51 (2000); Worcester v. Gencarelli, 34 Mass.App.Ct. 907, 909 (1993). Witness fees under G.L.c. 262, §29 are limited to $6 per day, and ten cents a mile for travel. Therefore, the defendants are not entitled to the claimed costs, nor are the defendants entitled to the statutory witness fees as Papa did not testify at trial.
Protégé also disputes $272.03 for parking and mileage for the defendants’ counsel during trial. Those costs constitute normal overhead costs and are not recoverable. See Evans v. Lorillard Tobacco Co., 29 Mass. L. Rptr. 226, 2011 WL 7090715 at *6 (Mass.Super. 2011); Admiral Metals Servicenter Co., Inc. v. Micromatic Prods. Co., Inc., 25 Mass. L. Rptr. 489, 2009 WL 1873783 at *6 (Mass.Super. 2009); Cholfin v. Gordon, 1998 WL 1182066 at *1 (Mass.Super. 1998). The defendant’s request for costs will be reduced accordingly.
Protégé contends that it was the prevailing party at the TRO hearing, and the defendants should not be entitled to $28.84 in costs incurred at that stage. “A plaintiff can ‘prevail’ without winning judicial relief, if by his suit he succeeds in winning from a defendant a substantial part of what he has sued for.” Cleary v. Commissioner of Pub. Welfare, 21 Mass.App.Ct. 140, 152 (1985). Here, the case was litigated to a jury verdict and the defendants prevailed on all claims. The defendants achieved no substantial relief in any respect.
The court will award the defendants $17,618.14 in costs after deductions for expert fees, parking, and mileage.
D. Protégé’s Motion for Reconsideration
Protégé moves for reconsideration of its motion to amend the complaint to conform to the evidence. Protégé seeks to amend the G.L.c. 93A claim to include its allegations of the defendants’ misconduct during discovery. “Even where the issues raised are not within the scope of the pleadings, a judge, in the absence of prejudice (that is, an inability by the opposing party to prepare an adequate case or defense), is encouraged by the Massachusetts Rules of Civil Procedure freely to allow amendments to the pleadings to conform to such evidence as serves the merits of the action.” Reilly v. Massachusetts Bay Transp. Auth., 32 Mass.App.Ct. 410, 414-15 (1992). A judge may properly deny a motion to amend where the amended motion “would fail to state a claim on which relief could be granted.” *169 Bass River Lobsters, Inc. v. Smith, 7 Mass.App.Ct. 197, 198 (1979).
Chapter 93A “applies only to actions taken in the course of ‘trade or commerce, ’ and has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation . . ." Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 457 (2004). Regardless of whether Protégé’s allegations against the defendants are true, the allegations concern actions taken in the context of litigation and cannot be the basis for a claim under G.L.c. 93A. See Morrison, 441 Mass. at 457. Therefore, Protégé’s amended motion fails to state a claim upon which relief can be granted. Bass River Lobsters, Inc., 7 Mass.App.Ct. at 198. Protégé’s motion to amend the pleadings under Mass.R.Civ.P. 15(b) will be denied.
ORDER
For these reasons, the defendants’ motion for attorneys fees and costs will be ALLOWED in the amount of $202,257.50 in attorneys fees and $17,618.14 in costs and expenses, and otherwise DENIED. Protégé is awarded $20,000 in attorneys fees and attorneys fees and costs for serving the subpoena on TransAct as a sanction for the defendants’ inadequate discovery. Protégé’s motion for reconsideration of the court’s denial of the motion to amend the complaint to conform to the pleadings is DENIED.